IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO: 3:22CR00084 |
| | ) | |
| Plaintiff, | ) | JUDGE REBECCA GRADY JENNINGS |
| | ) | |
| -vs- | ) | |
| | ) | |
| BRETT HANKISON | ) | **DEFENDANT BRETT HANKISON'S** |
| | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Now comes the Defendant, BRETT HANKISON, by and through his undersigned counsel, and hereby submits the following sentencing memorandum and letters of support in the above-captioned matter.

                                                     Respectfully Submitted,

                                                     /s/ *Donald J. Malarcik*
                                                     Donald J. Malarcik (0061902)
                                                     Attorney for Brett Hankison
                                                     121 South Main Street, Suite 520
                                                     Akron, Ohio 44308
                                                     don@ohiodefensefirm.com
                                                     (330) 253-0785 (telephone)
                                                     (330) 253-7432 (facsimile)

                                                     /s/ *Ibrahim A Farag*
                                                     Farag Legal Services, PLLC
                                                     Attorney for Brett Hankison
                                                     4010 Dupont Circle, Suite 309
                                                     Louisville, KY 40207
                                                     502-541-0094

                                                     /s/ *Jack Byrd*
                                                     Law Offices of Jack Byrd, PLLC
                                                     Attorney for Brett Hankison
                                                     545 Mainstream Dr., Suite 420
                                                     Nashville, TN 37228
                                                     615-942-6366

**MEMORANDUM**

**Factual Background.**

Mr. Hankison is forty-nine (49) years old and was born in Lancaster, Ohio to the marital union of Paul Hankison and Nancy Hankison. Presentence Investigative Report "PSR", ¶ 60-61. His father, who served our country in Vietnam, passed away five (5) months before trial. Id. Mr. Hankison has two (2) older brothers who both served in the military as well. Id. His mother and two (2) brothers currently reside in Ohio, and Mr. Hankison maintains a close relationship with them. (Id.) He has never been married and has a twenty-one (21) year old daughter. PSR ¶ 62.

In 1994, Mr. Hankison graduated from Logan High School in Logan Ohio. Mr. Hankison later earned his bachelor's degree in Criminal Justice with a Minor in Sociology from the University of Cincinnati. PSR ¶ 68. After graduating college, Mr. Hankison began serving as a police officer with the Lexington Police Department. PSR ¶ 69. He held this position from 1999 until 2003. In 2003, he began as a police detective for the Louisville Metro Police Department. Id. He was employed with LMPD until August 2020. Mr. Hankison was diagnosed with and treated for PTSD following the events on March 13, 2020. PSR ¶ 66.

**Law.**

    **I. Mr. Hankison is Entitled to a Base Offense Level of Nineteen (19).**

The guideline for a violation of 18 U.S.C. § 242 is USSG § 2H1.1. Pursuant to § 2H1.1(a)(1), the base offense level is the offense level from the offense guideline applicable to any underlying offense. In this case, the PSR asserts that the underlying offense is attempted murder "based on the jury finding that the offense involved an attempt to kill." PSR ¶ 44. The defense timely objected, noting that the jury's finding that the offense involved an attempt to kill is not synonymous with a finding of an intent to commit murder. An individual can act with an intent to

2

kill based on serious provocation, i.e., Kenneth Walker firing a weapon at law enforcement before Mr. Hankison returned fire.

To prove an attempt crime, the government must prove an intent to commit the substantive offense. United States v. Brooks, 67 F.4th 1244, 1245 (10th Cir. 2023). Therefore, although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill. Id.

Federal law recognizes a hierarchy of homicide offenses. Murder is the unlawful killing of a human being with malice aforethought. United States v. Currie, 911 F.3d 1047, 1050 (10th Cir. 2018). Voluntary manslaughter is the unlawful killing of a human being without malice upon a sudden quarrel or heat of passion. Id. (See 18 U.S.C.S. § 1112(a)). The key element separating murder from voluntary manslaughter is malice, which is not satisfied simply by killing with an intentional or reckless mental state; instead, malice specifically requires committing the wrongful act without justification, excuse, or mitigation. Id. Thus, a defendant is guilty of voluntary manslaughter—and not murder—when he or she commits an intentional killing that is nonetheless deemed to be without malice because it occurs in what the courts called the heat of passion, a passion of fear or rage in which the defendant loses his normal self-control as a result of circumstances that would provoke such a passion in an ordinary person, but which did not justify the use of deadly force. Id.

    a. Base Offense Level.

U.S. Sentencing Guidelines Manual § 2A2.2(a) provides a base level offense of fourteen (14) for Aggravated Assault. The Commentary to § 2A2.2 states: "This guideline also covers attempted manslaughter and assault with intent to commit manslaughter." USSG § 2A2.2(b)(2)

authorizes a five (5) level enhancement for discharging a firearm, resulting in an Adjusted Offense Level Subtotal of nineteen (19).

The Sixth Circuit Court of Appeals considered a similar issue in <u>United States v. Morgan</u>, 687 F.3d 688 (6th Cir. 2012). In *Morgan*, the sentencing court applied the cross-reference after finding that the defendant shot toward the heads of the officers involved and that the defendant had "the ability to form the intent to commit the offense of attempt to murder." <u>Id</u>. at 696. The Sixth Circuit held that these finding were insufficient to support the cross-reference and remanded, "[b]ecause the facts as presented do not inevitably lead to a finding of the specific intent to kill and because this finding is essential to the application of the attempted-murder cross-reference." <u>Id</u>.

Thus, the Government lacks sufficient evidence to meet its burden of demonstrating a specific intent to kill and the cross-reference to USSG § 2A2.1 is not applicable.

**II. Mr. Hankison is Entitled to a Three Point Reduction for Acceptance of Responsibility.**

The Sixth Amendment to the U.S. Constitution guarantees every person accused of a federal felony the right to a speedy and a public trial before a jury of the accused's peers. See U.S. Const. amend. VI.

USSG § 3E1.1 authorizes a decrease a defendant's offense level by three (3) if the defendant accepts responsibility for the offense. Under USSG § 3E1.1(a), the district court must decrease a defendant's offense level by two points if the court determines that the defendant 'clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Under section 3E1.1(b), the Court must decrease the defendant's offense level by an additional point if: (1) the defendant qualified for the two-point reduction under section 3E1.1(a); (2) the defendant's offense level "prior to the operation of subsection (a) is level 16 or greater,"; and (3) the Government has

4

filed a motion confirming that:

> [T]he defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently.

Id.

Here, the PSR argues that Mr. Hankison is not entitled to any reduction for accepting responsibility for the offense. PSR ¶ 51. The defense timely objected, arguing that that USSG 3E1.1 is an unconstitutional penalty imposed for Mr. Hankison exercising his fundamental, constitutional right to a trial.

Recently, a district court in the Southern Division of New York addressed the functionality of § 3E1.1 in United States v. Tavberidze, 769 F. Supp. 3d 264 (S.D.N.Y. 2025). In that court's view, § 3E1.1(b) violates the Sixth Amendment right to trial in at least two ways. First and foremost, § 3E1.1 in its entirety effectively penalizes a defendant who, whether innocent or guilty, proceeds to trial based on his decision to exercise his Sixth Amendment right to trial. Id. But whereas section § 3E1.1(a) at least arguably justifies this imposition as a reward for a defendant's demonstrating genuine remorse, the only ground given for imposing the additional penalty under § 3E1.1(b) is that the defendant failed to save the Government from having to prepare for trial. Id. The court found that these grounds "cannot possibly be an adequate ground for penalizing a defendant for the exercise of a constitutional right." Id. "Worse still, on this flimsy basis section 3E1.1(b) penalizes a defendant who just takes too long to decide whether he wants to assert his constitutional right to trial, even if he ultimately waives it." Id.

The Tavberidze court further held that § 3E1.1(b) also violates the Sixth Amendment because it conditions the application of the one-level reduction on a motion by the Government. Pursuant to § 3E1.1(b), a district judge cannot apply the one-level reduction except "[u]pon motion

of the government." U.S.S.G. § 3E1.1(b); see also U.S.S.G. § 3E1.1 cmt. 6 ("[A]n adjustment under subsection (b) may only be granted upon a formal motion of the Government at the time of sentencing."). "By empowering the Government, rather than the district court, to determine the extent to which the defendant has relieved it of that burden and to decide whether he is therefore entitled to the reduction, section 3E1.1(b) amplifies the pressure exerted on a defendant to plead guilty, rather than proceed to trial." Id. The court held that, in this way, § 3E1.1(b)'s requirement that the Government move for the one-level reduction further burdens the exercise of the Sixth Amendment right. Id.

### III. Mr. Hankison Deserves a Downward Departure Based on § 5K2.10, Kenneth Walker's Provocation.

The uncontroverted testimony at trial was Kenneth Walker fired his weapon first as officers entered the apartment to serve a search warrant. In the present case, provocation has clearly been established based on the government's decision not to charge officers M.C. and J.M. with any criminal conduct.

USSG § 5K2.10 permits a downward departure "if the victims wrongful conduct contributed significantly to provoking the offense behavior." Mr. Walker's firing of his weapon once officers forced their way into the apartment substantially provoked three officers to discharge their own weapons. The policy statement for § 5K2.10 instructs the court to consider:

**(1) The size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant.**

In the present case, the evidence established that Mr. Walker was able to take cover at the end of a long hallway while officers, unable to see him upon entering the doorway, were in a "fatal funnel."

6

**(2) The persistence of the victim's conduct and any efforts by the defendant to prevent confrontation.**

Mr. Walker hid his weapon after shooting Officer J.M; he remained in the apartment for an extended period of time and initially blamed B.T. for shooting Officer J.M. Mr. Hankison was captured on body worn camera calmly instructing Mr. Walker out of the apartment where he was apprehended without incident.

**(3) The danger reasonably perceived by the defendant, including the victim's reputation for violence.**

Mr. Hankison reasonably perceived that his fellow officers were being executed in a fatal funnel with a long gun.

**(4) The danger actually presented to the defendant by the victim.**

Mr. Hankison observed Mr. Walker shoot and nearly kill Officer J.M. inches from where he himself was standing.

**(5) Any other relevant conduct by the victim that substantially contributed to the danger presented.**

Mr. Walker never responded to multiple knock and announcements of law enforcement.

**(6) The proportionality and reasonableness of the defendant's response to the victim's provocation.**

Mr. Hankison stopped firing his weapon when the gunfire exchange between Mr. Walker and fellow officers stopped.

Accordingly, Mr. Hankison should receive a downward departure under § 5K2.10.

**IV. Mr. Hankison Should Receive a Downward Departure Pursuant to § 5K2.0 Based on his Susceptibility to Abuse in Prison.**

Under USSG § 5K2.0, the court can depart from the applicable guidelines range if: "in the case of offenses other than child crimes and sexual offenses, the court finds. . . that there exists an aggravating or mitigating circumstance." § 5K2.0(a)(1)(A).

7

The United States Supreme Court found susceptibility to abuse is a valid reason for a downward departure under the Guidelines. Koon vs. United States, 518 U.S. 81, 116 S. Ct. 2036 (1996) (approving downward departure for susceptibility to abuse for police officers). Indeed, in Koon, the Court determined that a defendant's susceptibility to abuse is compounded by "widespread publicity and emotional outrage . . . is just the sort of determination that must be accorded deference by the appellate courts." Id. at 96.

In United States vs. LaValle, 439 F.3d 670, 677 (10th Cir. 2006), the court granted the defendant a two-level downward departure under 5K2.0 based on the defendant correctional officer's particular susceptibility to abuse in prison. The court noted that the case was reported in a publication distributed among federal inmates as well as the case's overall notoriety. Id. at 707-708.

The court in United Stated vs. Volpe, 78 F. Supp. 2d 76 84 (E.D.N.Y 1999) affirmed in part, dismissed in part, 224 F.3d 72 (2nd Cir. 2000) also granted a two-level downward departure in an 18 U.S.C. § 242 case that drew extensive media coverage. The court granted this departure, reasoning that the violence of Volpe's crime, his status as a police officer, and the extensive national publicity surrounding the case would "expose Volpe to abuse at the hands of other prisoners or segregation to avoid such abuse." Id.

**V.      Mr. Hankison should receive a downward departure based on successive prosecutions.**

District judges may consider the "hardship" imposed by successive prosecutions in deciding whether to depart downward. Koon, 518 U.S. at 112. In Koon, the Court found that the district court did not abuse its discretion in granting a downward departure based on successive state and federal prosecutions. Id. "District court did not abuse its discretion in determining that a federal conviction following a State acquittal based on the same underlying conduct . . .

8

significantly burdened the defendant. The state trial was lengthy, and the toll it took is not beyond the cognizance of the district court." Id.

Mr. Hankison was charged with three (3) counts of felony one wanton endangerment in state court for firing into the apartment of C.N., Z.F., and C.E. After a jury trial where prosecution called twenty-six (26) witnesses, Mr. Hankison was acquitted on March 3, 2022. Five months later, Mr. Hankison was indicted in the present case in federal court. The first federal trial began in October of 2023 and concluded as a mistral in November, 2023. The second trial started eleven (11) months later.

Accordingly, Mr. Hankison respectfully submits that successive prosecutions in this unique case present a compelling reason for a downward departure.

**VI.    Mr. Hankison requests a significant variance in recognition of his history and characteristics.**

Mr. Hankison has no prior record, a history of service to his community, strong community ties, a strong employment record, as well as family ties, and responsibilities that warrant a significant variance.

**VII.    Goals of Sentencing**

After United States v. Booker, federal sentencing is vastly different. Treating the Guidelines as advisory requires the Court to consider the guidelines range calculation as merely one of many factors in determining a sentencing *no greater than necessary to achieve the goals of sentencing* as set forth in 18 U.S.C. § 3553(a)((2). (Emphasis added.) See, Gall v. United States, 128 S.Ct. 586, 597 n.6 (2007); Kimbrough v. United States, 128 S.Ct. 558, 570 (2007). The overriding principle and mandate of § 3553(a) requires district courts to impose a sentence "sufficient but not greater than necessary," to achieve the four purposes of sentencing as set forth in Section § 3554(a)(2): (a) retribution; (b) deterrence; (c) incapacitation; and (d) rehabilitation.

9

Id.

The "sufficient but not greater than necessary" requirement has been referred to as the "parsimony provision." See, United States v. Denardi, 892 F. 2d 269, 276-77 (3rd Cir. 1989). This Circuit has found that the parsimony provision serves as the "guidepost for sentencing decisions post-Booker" and sets and independent limit on the sentence a court may impose. United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006), see also United States v. Cull, 446 F.Supp.2d 961, 963 (E.D. Wis. 2006). Since, § 3553(a) requires a sentence to be no greater than necessary to meet the four purposes of sentencing, imposition of a sentence greater than necessary to meet those purposes is reversible, even if within the applicable guideline range.

**VIII. The Guidelines and Other Factors the Court Must Consider in Determining Punishment that Fulfills the Sentencing Mandate under § 3553(a).**

Under 18 U.S.C. § 3553, the Court is required to consider multiple factors in determining the particular sentence to be imposed. The first factor is the nature and circumstances of the offense and the history and characteristics of the defendant. Id. at (a)(1). In the present case, Mr. Hankison's history and characteristics warrant a downward departure from the applicable sentencing guideline provisions because a sentence within the guidelines may be greater than necessary in order to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

Mr. Hankison has been a hardworking, law-abiding citizen, who dedicated his life to serving and protecting the community. He provides care and assistance to his elderly mother and his daughter. Mr. Hankison requests this Honorable Court to consider the significant burden his sentence will have on his family.

Second, the sentence must:

> (a) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (b) afford adequate deterrence to criminal conduct;

10

(c) protect the public from further crimes of the defendant

A sentence within the guideline range would be greater than necessary to provide adequate deterrence and to protect the public from further crimes. A downward departure from the applicable guideline would be sufficient for Mr. Hankison. Mr. Hankison has an incredible support system waiting for him when he is subsequently released from prison.

**Conclusion.**

Mr. Hankison respectfully submits that his base level offense of 14 is properly found at USSG § 2A2.2 under Attempted Involuntary Manslaughter and should be increased by five (5) levels for discharging a firearm resulting in an adjusted offense level of nineteen (19).

Mr. Hankison should not be punished for exercising his constitutional right to trial by failing to decrease the offense level under § 3E1.1, resulting in a total offense level of sixteen (16). Mr. Hankison respectfully requests that this Court issue a downward departure pursuant to § 5K2.10 for Mr. Walker's misconduct in firing at officers executing a search warrant. Mr. Hankison also believes that the evidence supports a downward departure under § 5K2.0, as Mr. Hankison is suspectable to abuse based on his status as a police officer, coupled with the extensive national and international media attention this case has generated over the past five plus years. Mr. Hankison should also receive a downward departure for multiple successive prosecutions in state and federal court. Finally, Mr. Hankison respectfully submits that the 18 U.S.C. § 3553 factors support a significant variance in this case.

        Respectfully submitted,

        /s/ *Donald J. Malarcik*
        Donald J. Malarcik (0061902)
        Attorney for Brett Hankison
        121 South Main Street, Suite 520
        Akron, Ohio 44308
        don@ohiodefensefirm.com
        (330) 253-0785 (telephone)
        (330) 253-7432 (facsimile)

        /s/ *Ibrahim A Farag*
        Farag Legal Services, PLLC
        Attorney for Brett Hankison
        4010 Dupont Circle, Suite 309
        Louisville, KY 40207
        502-541-0094

        /s/ *Jack Byrd*
        Law Offices of Jack Byrd, PLLC
        Attorney for Brett Hankison
        545 Mainstream Dr., Suite 420
        Nashville, TN 37228
        615-942-6366

### CERTIFICATE OF SERVICE

    I hereby certify that on this 6th day of July, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all partied indicated on the electronic filing receipt.

        /s/ *Jack Byrd*
        Jack Byrd
        Attorney for Brett Hankison