UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                    Plaintiff

v.                                          Criminal Action No. 3:22-cr-84-RGJ

BRETT HANKISON                                              Defendant

* * * * *

**MEMORANDUM OPINION AND ORDER**

Defendant Brett Hankison ("Hankison") moves for bond pending appeal under 18 U.S.C. § 3143(b). [DE 296]. The United States responded. [DE 297]. While the motion does not present close or difficult issues, the need to search an extensive record and flesh out bare arguments and case law causes this Memorandum and Opinion to be significantly longer than the arguments should have warranted. Hankison raises numerous issues but fails to indicate how the court's decisions, the majority of which were discretionary, presented close or novel questions or violated Sixth Circuit standards. *United States v. Garnett*, No. 05-CR-20002-3, 2008 WL 2796098, at *4 (E.D. Mich. July 18, 2008) ("Mere identification of issues, without substantive arguments addressing the requirements of 18 U.S.C. § 3143(b)(1)(B), is not sufficient to establish a substantial question of law or fact."). Having considered the parties' filings, the lengthy record, and the applicable law, the Court **DENIES** Hankison's Motion for Bond Pending Appeal [DE 296] and Motion for Extension of Time [DE 298].

## I.  BACKGROUND

By grand jury indictment, Hankison was charged with two counts of deprivation of rights under color of law. *See* 18 U.S.C. § 242. The Court conducted jury selection October 15, 2024

1

through October 18, 2024. [DE 251 at 13571]. The jury trial began on October 21, 2024 and continued through October 24, 2024; and October 28, 2024 through November 1, 2024. [*Id.*].

Jurors deliberated October 30, 2024 through November 1, 2024. [DE 251; DE 271 at 14004]. After an *Allen* charge and partial verdict instruction, the jury returned a unanimous verdict of not guilty as to Count 2 of the Indictment. [*Id.*]. The verdict was published in open Court at 6:50 p.m. and the jury was polled. [*Id.*]. With the parties in agreement, the Court read to the jury a second *Allen* charge as to Count 1 and gave the jurors the option to continue deliberations or adjourn for the evening. [*Id.*]. The jury indicated to the Court at 7:22 p.m. that they would continue deliberations and dinner was ordered. [*Id.*]. A final note was sent to the Court at 9:02 p.m. stating that the jury had reached unanimous verdict as to Count 1. [*Id.*]. The verdict as to Court 1 of the Indictment was published in open Court and the jury was polled. [*Id.*].

Hankison filed several post-trial motions including a motion to interview jurors, a motion for acquittal, and a motion for a new trial. [DE 252; DE 253; DE 254]. The United States responded to each motion in opposition. [DE 257; DE 258; DE 260]. With detailed citation, the Court denied Defendant's motions in separate opinions. [DE 271; DE 272; DE 286].

Hankison's initial Pre-Sentence Investigation Report ("PSR") was filed of record on February 27, 2025. [DE 273]. Both the United States and Hankison asserted objections. [DE 280-1 at 14153-56]. The Final PSR was then filed on June 16, 2025. [DE 280]. Hankison filed his sentencing memorandum on July 6, 2025. [DE 281]. The next day, the United States moved for a 14-day extension of time to file its sentencing memorandum and a corresponding 14-day continuance of the sentencing, which was set for July 16, 2025. [DE 282].

The United States' motion requested "additional time to weigh the relevant issues in this case." [DE 282 at 14238]. The sentencing was originally scheduled for April 8, 2025 and had

already been continued once. [DE 276]. Several months had passed since the initial continuance and the Court found that "no reason is given for the need for more time to consider the issues on the eve of sentencing." [DE 283 at 14242]. As a result, the Court granted in part and denied in part to give the United States a modest extension of time for filing its sentencing memorandum to July 16, 2025, and rescheduled the sentencing to July 22, 2025. [DE 283 at 14243]. The United States then filed its sentencing memorandum July 16, 2025, under the signature of new counsel, asserting for the first time a complete change in the United States' position on both the prosecution of the case and sentencing.[1] [DE 285].

The Court conducted a sentencing hearing July 21, 2025. [DE 288]. At sentencing numerous objections were resolved. Importantly, Hankison objected to the base offense level being calculated using the cross reference to USSG § 2A2.1 (Attempted Murder) instead of utilization of U.S.S.G. § 2A2.2 (Aggravated Assault). Hankison asserted that Aggravated Assault was more appropriate and would include a five-level increase for discharging a firearm, resulting in an adjusted offense level of 19 as opposed to 27 under the Attempted Murder cross reference. [DE 280 at 14144 (reflecting the original calculation)]. After extensive argument, the Court agreed that looking at the situation as a whole, the shots fired by Walker, the extreme emotional distress of the situation, U.S.S.G. § 2A2.2 with the enhancement for discharge of a firearm was more appropriate. After resolving several objections then, the Court ruled on the appropriate range:

---

[1] Both trials in this case were prosecuted by Michael Songer and Anna Gotfryd from the D.C. office of the Department of Justice ("DOJ"). On March 26, 2025, Ms. Gotfryd withdrew. [DE 277]. Mr. Songer has not withdrawn, but did not appear at sentencing. In his place, Robert Keenan from the Los Angeles office of the DOJ filed the sentencing memorandum and attended sentencing. It appeared, however, that Mr. Keenan was unaware of the United States' objections to the initial PSR. [DE 290 at 14356].

So with the objections resolved, the guideline for offenses under [§]242, the base offense level here is 14. The five-level increase under [U.S.S.G. §] 2A2.2(b)(2)(A) for a firearm being discharged makes the adjusted offense level 19. The specific offense characteristic that the defendant was a public officer at the time of the offense adds six bringing the total offense level to 25.

The defendant's criminal history score is zero which places him in a criminal history category of 1 bringing the applicable guideline range to 57 to 71 months and the fine range is also adjusted given the new guideline range and that's 20,000 to 200,000.

[DE 290 at 14384-85].

After an extensive hearing and the granting of significant variances, the Court sentenced Hankison to a below guideline sentence of 33 months imprisonment followed by three years of supervised release. [DE 290 at 14497-14499; DE 292]. Hankison appealed. [DE 294]. Twenty days later, Hankison moved for bond pending appeal. [DE 296]. The United States responded on September 11, 2025, stating that Hankison's motion was unopposed. [DE 297].

## II.    STANDARD

The Bail Reform Act, 18 U.S.C. § 3143(b), creates a presumption against release during appeal. 18 U.S.C. § 3143(b); *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002). The presumption can be overcome if the court finds the following:

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . **and**

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
(i) reversal,
(ii) an order for a new trial,
(iii) a sentence that does not include a term of imprisonment, or
(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b) (emphasis added). If the presumption is overcome, the court must order the release of the defendant "in accordance with [18 U.S.C. §] 3142(b) or (c) . . . except that in the

circumstance described in subparagraph (B)(iv) of [§ 3143(b)], the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence." *Id.*

## III.    DISCUSSION

### A.  Risk of Flight or Danger to Others

Relying on the Court's prior findings at the time of conviction, Hankison asserts that he is not a flight risk and does not pose a danger to the safety of others. [DE 296 at 14547]. At the time of conviction, the United States requested that Hankison be immediately detained in light of his conviction a on presumption offense under 18 U.S.C. 3142. [DE 243 at 11835]. The United States asserted that "[t]his is a crime of violence and he's facing a sentence of up to life in prison. He should be treated like any other violent person who's been convicted of such an offense and taken into custody."[2] [*Id.*]. Defendant argued that "he remain on his conditions of release []. He's been on that for multiple years. He has had no issues at all with that. He has no intention of fleeing the district or anything else and he has complied with each condition that the probation/supervision has required of him, and we are asking that he remain on the same conditions as the majority of clients would be done in this condition." [*Id.*].

The Court determined that:

> [g]iven the fact that he has been out on bond for an extensive period of time, given the fact that he has, in fact, showed up now for multiple trials, multiple hearings in this court, and given what I understand from the probation office to be extensive ties to the community, I don't have a problem with leaving him out on bond. . .

[*Id.* at 11835-36].

In sum, the Court finds that Hankison has no other criminal history. He has lost his ability to possess a firearm and cannot be employed in the same positions of trust as he was at the time of

---

[2] The United States in an unexplained change of posture now asserts that Hankison is not a danger, not a flight risk, and should remain on bond pending appeal. [DE 297].

this crime in law enforcement, and as such, is not a danger to the community. *See* § 3143(b)(1). Moreover, as noted, he has been on the terms and conditions of his bond for a significant time without incident. Thus, the Court continues to find that he is not a risk of flight. *See id.*

## B. Substantial Question of Law or Fact

Hankison argues that his appeal raises substantial questions of law or fact on multiple grounds that: (1) his sentence is greater than necessary based on the Court's failure to depart on specific grounds; (2) the Court improperly allowed rebuttal testimony at trial; (3) there was insufficient evidence to convict; and (4) the Court's failure to include specific wording in the jury instructions as requested by Hankison. [DE 296].

"[A]n appeal raises a substantial question when the appeal presents a 'close question or one that could go either way' and that the question 'is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor.'" *United States v. Pollard,* 778 F.2d 1177, 1182 (6th Cir. 1985) (quoting *United States v. Powell,* 761 F.2d 1227, 1233–34 (8th Cir. 1985) (en banc)); *United States v. Kudmani*, No. 3:13CR-00173-JHM, 2017 WL 2957941, at *2 (W.D. Ky. July 11, 2017). Courts have also defined a substantial question, as a question that is "either [] novel [], one that has not been decided by controlling precedent, or one which is fairly doubtful." *United States v. Henson,* 663 F.Supp. 1112, 1113 (W.D. Ky. 1987) (citing *United States v. Miller,* 753 F.2d 19, 23 (3d Cir. 1985)); *United States v. Toya,* No. 20-CR-20452, 2025 WL 2724903, at *2 (E.D. Mich. Sept. 24, 2025). "[T]he Sixth Circuit has held that 18 U.S.C. § 3143(b)(1)(B) 'does not require the district court to find that it committed reversible error' for it to find that the appeal raises a substantial question." *United States v. Roth,* 642 F. Supp. 2d 796, 799 (E.D. Tenn. 2009) (quoting *Pollard,* 778 F.2d at 1182). Nor must the Court find that the Defendant is likely to prevail on appeal.

6

*Powell*, 761 F.2d at 1234; *see also United States v. Eaton*, 2013 WL 5328212, at *2 (W.D. Ky. Sept. 20, 2013).

The Sixth Circuit has also concluded that "mere identification of issues" is not sufficient to establish a substantial question of law or fact required by 18 U.S.C. § 3143(b)(1)(B). *United States v. Moore,* Nos. 88–5460, 88–5503, 1988 WL 63191, at *1 (6th Cir. June 16, 1988); *Garnett*, 2008 WL 2796098, at *1. The defendant bears the burden of proving the questions raised are substantial. *United States v. Vance*, 851 F.2d 166, 168 (6th Cir. 1988).

As an initial matter, prior to sentencing this Court resolved several post-trial motions. [DE 271 (Opinion and Order on Motion to Interview Jurors); DE 272 (Opinion and Order on Motion for Acquittal); DE 286 (Opinion and Order on Motion for New Trial)). Notably, as it relates to the motion at issue, Hankison's Motion for Acquittal asserted two primary grounds to overturn his conviction. First, Hankison argued that the evidence at trial was insufficient to prove beyond a reasonable doubt that the defendant intentionally restrained Breonna Taylor's ("Taylor") movement by force. [DE 253 at 13581]. Second, Hankison asserted that the evidence was insufficient to prove that Taylor was alive at the time he fired shots through a bedroom window. [*Id.* at 13582]. Hankison argued that "the Government failed to prove that Ms. Taylor was alive at the time Mr. Hankinson fired his second volley of shots through the bedroom window, let alone that Ms. Taylor was conscious, and her movement was somehow restrained by Brett Hankison." [*Id.* at 13582]. To the extent these grounds are asserted in the current motion as a substantial question of law either as to the improper rebuttal testimony or sufficiency of evidence to convict, the Court incorporates the reasoning in its Opinion and Order.  [DE 272].

Further, Hankison also moved for "reversal of his conviction as to Court 1, and a new trial regarding same in the interest of justice" under Federal Rule of Criminal Procedure ("Rule") 33(a)

and (b)(2) urging the Court to find prosecutorial misconduct throughout trial. [DE 254 at 13587]. As the Court noted in its Opinion and Order, the motion was unwieldy in its length, "nebulous and disjointed," and it was difficult for the Court "to parse the specific claims of misconduct from the motion" as it appeared "to be a circumstance of throwing everything possible at the Court and seeing what sticks." [DE 286 at 14268]. Ultimately, in a 58-page Opinion and Order the Court addressed six arguments asserted by Hankison that the testimony elicited by the United States during trial or the prosecutor's statements in closing argument were improper. To the extent any of these numerous arguments are tangentially reasserted here, the Court incorporates by reference its extensive facts, law and analysis. [DE 286].

### i.    The Parties' Assertion that Hankison's Sentence is Greater than Necessary Based on the Court's Failure to Grant Certain Departures at Sentencing.

Hankison received a substantially below guideline sentence (approximately **half** of the guideline range), yet he now asserts that such sentence is "greater than necessary" despite the Court's extensive analysis of all requests for departure and variance and ruling in Hankison's favor on what he believed to be the correct guideline range. Hankison agrees that the Court properly calculated the guideline range [DE 290 at 14382 (agreeing on the guideline range before the issue of acceptance of responsibility was determined)], was granted a variance, and challenges only the Court's discretionary determinations of departure and acceptance of responsibility.

The Sixth Circuit has long applied a presumption of reasonableness to a district court's decision to impose a within-guidelines sentence. *See United States v. Goodwin*, 87 F.4th 321, 329 (6th Cir. 2023) (citing *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc) and *Rita v. United States*, 551 U.S. 338, 347 (2007)). Moreover, the Sixth Circuit reviews the substantive sentencing decisions under a deferential abuse-of-discretion standard that requires a defendant to "firmly convince[ ]" us that the district court chose an excessive sentence. *Goodwin*,

87 F.4th at 329. Here, it is hard to imagine that a considerably below guideline sentence, where the parties do not challenge the guideline calculation, could form a "close call" substantial question on appeal to materially alter the already below guideline sentence sufficiently to substantiate the granting of bond.  Hankison asserts no novel or undecided questions of law, and only appears to disagree with the Court's discretionary sentencing decisions.

The Sixth Circuit has also "consistently held that the decision by a district court not to depart downwards from the Guidelines is ***not reviewable on appeal*** unless the record reflects that the district court was not aware of or did not understand its discretion to make such a departure." *United States v. Puckett*, 422 F.3d 340, 344 (6th Cir. 2005) (quoting *United States v. Stewart,* 306 F.3d 295, 329 (6th Cir. 2002)(emphasis added)); *see also United States v. Moore*, No. 24-1427, 2025 WL 789557, at *16 (6th Cir. Mar. 12, 2025)("We may review a denial of a motion for a downward departure only if the district court believes incorrectly that it lacks authority to consider the defendant's mitigating circumstances and lacks discretion to deviate from the guidelines."); *United States v. Burgess*, No. 22-1110, 2023 WL 179886, at *2 (6th Cir. Jan. 13, 2023) ("the district court expressly considered Joseph's motion for a departure but concluded that a departure was not warranted in light of Joseph's particular medical difficulties. The court therefore understood its discretion to grant the departure but decided not to. So we cannot review the court's decision to deny the departure."); *United States v. Taylor*, 818 F. App'x 495, 505 (6th Cir. 2020) (quoting *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008) and stating that "we may not review a district court's denial of a downward departure 'unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure.'"); *United States v. Lucas,* 357 F.3d 599, 609–10 (6th Cir. 2004) (same).

In *Puckett*, the Sixth Circuit discussed at length the case law surrounding this issue post-*Booker*. The *Puckett* Court noted that shortly following *Booker,* in *United States v. May,* 399 F.3d 817 (6th Cir. 2005), the Sixth Circuit "conclude[d] that the district court was aware of its discretion to grant a downward departure but determined that the facts of the case did not justify such a departure. Therefore, the district court's refusal to grant the downward departure is unreviewable on appeal." *Puckett*, 422 F.3d at 344 (quoting *May*, 399 at 827–28). This position was also reaffirmed in *United States v. Justin Jones,* 417 F.3d 547, 551 (6th Cir. 2005) (a determination to depart is "within the court's complete discretion to make."). Further, the *Puckett* Court noted that the Sixth Circuit position is supported by the stances of several other circuits. *United States v. Frokjer,* 415 F.3d 865 (8th Cir. 2005) ("[W]e see no reason why *Booker*-which left intact §§ 3742(a) and (b)-should alter our rule that a district court's discretionary decision not to depart downward is unreviewable."); *United States v. Andreano,* 417 F.3d 967, 971 (8th Cir. 2005); *United States v. Sierra–Castillo,* 405 F.3d 932, 936 n. 3 (10th Cir. 2005) (noting that the circuit court had no jurisdiction "to review a district court's discretionary decision to deny a motion for downward departure on the ground that a defendant's circumstances do not warrant the departure."); *United States v. Burdi,* 414 F.3d 216 (1st Cir. 2005) (noting that the circuit court lacks "jurisdiction to review 'a discretionary decision not to depart on the facts of the particular case.'"); *United States v. Hatcher,* 132 F. App'x 468, 481, 483, 2005 WL 1253867, *9, 12 (4th Cir. May 27, 2005) (decision to deny downward departure not reviewable, but underlying sentence reviewable under *Booker*); *United States v. Louis,* 137 F. App'x 329, 332, 2005 WL 1530110, *3 (11th Cir. June 30, 2005) (holding that district court's denial of downward departure is unreviewable); *United States v. Morrell,* 138 F. App'x 373, 374, 2005 WL 1607077, *2 (2d Cir.

July 8, 2005) (same); *United States v. Hagberg,* 138 F. App'x 949, 950, 2005 WL 1607314, *1 (9th Cir. July 8, 2005) (unpublished) (same).

Additionally, the Sixth Circuit has confirmed that it "will presume that the district court understood its discretion to depart, absent clear evidence in the record to the contrary." *United States v. Church*, 731 F.3d 530, 534 (6th Cir. 2013) (quoting *United States v. Crouch,* 288 F.3d 907, 910 (6th Cir. 2002)).  As the Sixth Circuit stated in *Church*, review of a district court's decision not to apply a departure is ***not applicable*** where there is mere disagreement over a departure's applicability.

> Here, there is no clear evidence that the district court failed to understand its discretion to depart downward. To the contrary: at the sentencing, the district judge made it clear that the reason he was denying Church's motion was not because he believed he lacked the power to grant it, but because he believed doing so was inappropriate, given the circumstances of the case. ("[T]he reality of the 5K2.10 motion is I will deny that because I don't find that the factors are met.")

*Church*, 731 F.3d at 534.

Because the decision to deny a departure is unreviewable, the only possible ground for asserting a substantial question on appeal is "whether the record reflects that the district court was not aware of or did not understand its discretion to make such a departure." *Puckett*, 422 F.3d at 344. None of Hankison's arguments assert that this court did not believe it had the discretion, in fact, all the assertions are that an appellate court could disagree with this Court's determination. That is simply an unreviewable argument.

### 1.  U.S.S.C. § 5K2.10 – Departure for Victim Conduct

Hankison argues there is a substantial question on appeal as the "District Court denied the parties request for a departure and narrowly interpreted 5K2.10 as inapplicable because the Government dismissed Mr. Walker as a victim in count one on the eve of trial." [DE 296 at 14551]. U.S.S.C. § 5K2.10 states: "If the victim's wrongful conduct contributed significantly to provoking

the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense."

As to Hankison's request to apply U.S.S.C. § 5K2.10, the Court found:

based upon the plain language of the guideline finds 5K2.10 to simply be inapplicable. While the defense memo does accurately cite the language of the guideline, the United States states that it permits a downward departure if a third party's wrongful conduct contributed significantly to provoking the offense behavior. That's simply not what the guideline says, and that's not in keeping with the case law applying that guideline.

The case cited by both parties to support it, *Koon [v] United States*, the court found that it was within the court's discretion to grant the departure based on the individual's conduct leading up to the deprivation of rights by the officer, but in that case the individual who was the aggressor or who began the provocation was actually the victim in this case, [] *Koon*.

In this case, however, the victim is Ms. Taylor and none of Ms. Taylor's actions contributed to the defendant's behavior. The initial bullet fired by Mr. Walker may have contributed to Cosgrove or Mattingly's actions, certainly it did contribute to their decision to return fire and arguably maybe that could be extended to Mr. Hankison as well, but the guideline and the case law strictly focus on the victim's behavior.

There was a single victim in the conviction and therefore factually speaking the guideline would not apply here. Moreover, to the point brought forth by the United States, I agree and I think this was mentioned by Mr. Malarcik as well, these departures are generally applied in circumstances where aggravated or mitigating circumstances are not adequately taken into account, but here we just talked for quite a while about the provocation. We have taken it into account in choosing to apply the aggravated assault guideline as opposed to the attempted murder guideline. We are taking it into account by choosing attempted manslaughter based on the emotional distress caused by the shooting itself; the provocation. I think we have taken it into account adequately, so the guidelines reflect that. I am going to deny the request for a downward departure.

[DE 290 at 14394-96].

Nothing in this record suggests that the Court denied Hankison's motion because it believed it "lacked the power to grant it," instead the record reflects that the Court denied the departure "because [the Court] believed doing so was inappropriate, given the circumstances of

12

the case." *Church*, 731 F.3d at 534.  The Court also noted departures are typically applied when aggravating or mitigating circumstances are not adequately accounted for.  But as the Court noted it would not exercise discretion here because the Court believed those factors were already adequately considered in applying the aggravated assault guideline as opposed to the attempted murder guideline. [DE 290 at 14396].  As a result, the denial of this departure is not reviewable, and this is not a substantial question on which bond could be granted.

### 2.  U.S.S.C. § 5K2.0 – Departure for Susceptibility to Abuse in Prison

Hankison also asserts that there is a substantial question based on the Court's denial of a departure under U.S.S.C. § 5K2.0 for "Hankison's unique susceptibility to abuse in prison." [DE 296 at 14551].  Hankison states that the Court "failed to properly account for the massive amount of media attention devoted to Breonna Taylor and the fact that Mr. Hankison is the only individual to face public trial . . . the District Court's belief that this case is like other cases under 5K2.0 is a question that 'could go either way and is certainly a close question.'" [DE 296 at 14552].  Notably, Hankison does not assert that the Court was "not aware of or did not understand its discretion to make such a departure."  Specifically, the Court stated the direct opposite:

> *I don't disagree with the parties' citations, that the court has discretion under this guideline to depart because of susceptibility to abuse in prison*; however, I'm not going to conclude to use my discretion for the following reasons in this case.

[DE 290 at 14404 (emphasis added)].  So, the Court recognized its discretion, but merely disagreed with applying the departure in the circumstances of the case and explained those reasons at length.

13

[DE 290 at 14404-05].[3]  Because the Court acknowledged its ability to exercise its discretion but chose not to and discussed those reasons, the Court's denial of this departure is not reviewable on appeal and thus, not grounds for bond. *Puckett*, 422 F.3d at 344.

### 3.    U.S.S.C. § 5K2.0 – Departure for Successive State and Federal Prosecutions

Hankison asserts that there is a substantial question on appeal based on the Court's failure to depart for successive state and federal prosecutions.  Hankison asserts that the Court failed to depart because it disagreed that the federal charges were identical to the state charges.  Hankison states that "[i]f the Sixth Circuit agrees that Mr. Hankison did in fact face three trials 'based on the same underlying conduct' *See Koon*, at 112; Mr. Hankison could in fact face no prison or face a sentence that would be served during the duration of the Appeal." [DE 296 at 14553].

Again, Hankison does not assert that the Court was "not aware of or did not understand its discretion to make such a departure." *Puckett*, 422 F.3d at 344. Specifically, the Court stated that

---

[3] The Court described the reasons why it declined to exercise discretion.

> Many defendants are particularly susceptible and at risk for reasons known to the BOP at the time of placement and many for reasons unknown to the BOP at the time of placement and which can't fully be anticipated by the Bureau of Prisons at the time of placement. Where those reasons are openly known at the time of placement, the court must conclude that the Bureau of Prisons is equipped to handle such situations. Are there aberrations to that? There are aberrations to every rule, I feel, and there are circumstances that come up that no one can anticipate, but where the reasons are openly known at the time of placement, the court must presume that the Bureau of Prisons is equipped to handle those situations.

> . . . Moreover, this isn't really outside the heartland of convictions under this guideline. This guideline is for 242 and there's a specific enhancement here for where it's done under color of law.

> There's an anticipation that the individual convicted under this particular guideline is either going to be a public official under the first part of subsection (b) or an officer of some type in law enforcement. And so the BOP is well-schooled in this type of defendant and is expected to take the proper precautions.

[DE 290 at 14404-05].

"while I'm not going to choose to exercise my discretion here for the downward departure, I will consider it as part of the 3553(a) factors and the mental health considerations that are taken into account." [DE 290 at 14407]. So, while it was clear that the Court understood it had discretion, it chose not to exercise it for reasons given on the record[4] and then considered the effect of the multiple prosecutions elsewhere in the Court's sentencing. As a result, this is not a substantial question on appeal because it is not an issue subject to review on appeal, nor would it have been material to the sentence because it was already considered in the § 3553(a) factors, and thus, would not alter the Court's sentence any further. *Puckett*, 422 F.3d at 344.

### 4. Acceptance of Responsibility

Hankison objected to the PSR's failure to give two points under U.S.S.G. § 3E1.1 for acceptance of responsibility noting that it is an unconstitutional penalty imposed for exercising

---

[4] The Court provided reasons for not departing.

> The acquittal in the state court was much more like the acquittal on Count 2 in this case than Count 1. There were very different pieces of evidence presented on those two counts in that specific manner, and so I think they're very consistent with one another, but they're not exactly the same charges.
>
> I'd also disagree with the idea that a hung jury in a federal trial is an unusual circumstance outside the heartland. They happen. And they don't necessarily happen because the evidence is weak or they don't necessarily happen because the presentation is not good or there's some other factor. There are many factors that contribute to a hung jury including the jurors themselves, and so I'm not necessarily sure that takes it out of the heartland.
>
> I have no doubt, no doubt, that these cases have been emotionally challenging for the defendant. As I also have no doubt that the successive prosecutions have been emotionally challenging for the victim's family. So I think on both sides, there has been a lot of emotionally challenging hurdles to be overcome based on the successive prosecutions here.
>
> While I am going to choose not to depart on these grounds of the emotional toll that the incident took, I am going to consider it as part of the history and characteristics of the defendant under 3553(a) based upon mental health which is what the PSR harkens to when it talks about this particular issue.

[DE 290 at 14406-07].

ones' fundamental constitutional right to trial. [DE 280-1 at 14155]. The argument was premised on *United States v Tavberidze*, 23-cr-585-03, USDC Southern District of New York, March 10, 2025, in which that court noted that the failure to apply USSG § 3E1.1 in a case where the defendant exercised his constitutional rights to go to trial is a violation of the Sixth Amendment. [*Id.*]. This argument was asserted at sentencing; however, Mr. Malarcik acknowledged "that the case law certainly here in the Sixth Circuit is pretty well settled and I'm not going to argue that those should be reversed by this court, but I wanted to preserve the record." [DE 290 at 14369].

After resolution of the legal issue, that well established Sixth Circuit case law is to the contrary,[5] counsel for Hankison stated that Hankison intended to accept responsibility in his allocution. [*Id.* (Mr. Malarcik: "what we have done is Mr. Hankison at our request has prepared a statement for acceptance of responsibility")].[6] The Court indicated that it would consider that allocution, but that the guidelines required certain standards be met to garner the two-point reduction in U.S.S.G. § 3E1.1(a) post-trial. Because, in the Court's view of the facts, the requirements were not met, the Court did not award the two-level reduction; however, Hankison

---

[5] The Sixth Circuit has previously held that "on its face § 3E1.1 is constitutional" and that it "does not constitute a penalty" for the exercise of a defendant's constitutional rights). *United States v. Cordell*, 924 F.2d 614, 619 (6th Cir. 1991). This holding was most recently reaffirmed in *United States v. Bethune*, No. 22-3688, 2023 WL 4204532, at *2 (6th Cir. June 27, 2023) ("'[N]ot every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid.' That is true here." (quoting *Corbitt v. New Jersey*, 439 U.S. 212, 218 (1978)). The reasoning for this rule was that if the "defendant's rehabilitation looks more certain," then judges have long had the power to reduce the sentence. *Id.* (quoting *United States v. Clemons*, 999 F.2d 154, 161 (6th Cir. 1993)).

[6] Counsel also asserted that the United States would not object to the two-level reduction.

> We have reduced that statement to writing and we've shared it with opposing counsel. I don't want to speak for opposing counsel, but based on the discussion we had previously, I think opposing counsel would agree that that statement that Mr. Hankison will read for the court does qualify under 3E1.1 as acceptance of responsibility, and I do not believe that after Mr. Hankison gives that statement, the government will oppose a two-level reduction.

[DE 290 at 14370].

still received a below guideline sentence and the Court considered his acceptance of responsibility as part of its analysis of the § 3553(a) factors. As a result, this is not a substantial question on appeal, nor would it have been material to the sentence because it was already considered in the § 3553(a) factors and thus would not alter the Court's sentence any further.

Hankison asserts in this current motion that it is a substantial question on appeal "[w]hether it is appropriate to condition Acceptance of Responsibility on a Defendant's willingness to waive his right to appeal" and whether it is appropriate for "a trial court [to] consider[] motions filed by defense counsel as a failure of the defendant to accept responsibility." [DE 296 at 14554]. Because these issues could not be "substantial issues," "close calls," or material if Hankison fails to comply with the requirements of U.S.S.G. § 3E1.1(a), the Court begins its analysis with the question of whether his allocution would comply with "acceptance of responsibility" under the guideline and then the Court considers the specific issues regarding waiver of appeal and counsel arguments.

At sentencing, Hankison made the following allocution. Because Hankison asserts it complies with acceptance of responsibility and should garner the two-level reduction under the guidelines, the Court includes the allocution in its entirety.

> First, Your Honor, I would like to apologize to Ms. Taylor's family, Ms. Taylor's friends for the loss they've had to endure. With the ability of five years and my hindsight being 20/20 now, knowing the facts -- knowing the facts that I know about the case as opposed to what I thought those facts were at the time of that night, I never would have fired my gun.
>
> And I would like to apologize to my friends and family -- many of them here today, some of them that can't make it like my mother -- for the pain and suffering they've gone through and the trials that they've gone through as well. Thank you, Judge.

[DE 290 at 14448].

Under U.S.S.G. § 3E1.1(a), a defendant is entitled to a two-level reduction to the offense level if he "clearly demonstrates acceptance of responsibility for his offense." The Application Notes to this section state:

> Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. ***In rare situations*** a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a ***determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.***

U.S.S.G. § 3E1.1 cmt. n.2 (emphasis added). "The defendant bears the burden of showing that he has accepted responsibility." *United States v. Paulette*, 457 F.3d 601, 608 (6th Cir. 2006). "Even where a defendant does 'admit substantial elements of the crime charged,'" § 3E1.1(a) does not apply "if the defendant contests even one factual element of the offense." *United States v. Trevino*, 7 F.4th 414, 432 (6th Cir. 2021) (quoting *United States v. Coss*, 677 F.3d 278, 292 (6th Cir. 2012) (explaining that the defendants "did not admit the requisite mens rea" and therefore had not accepted responsibility)); *see, e.g.*, *United States v. Theunick*, 651 F.3d 578, 588 (6th Cir. 2011); *United States v. Johnson*, 627 F.3d 578, 585 (6th Cir. 2010); *United States v. Angel*, 355 F.3d 462, 478-79 (6th Cir. 2004). The commentary to § 3E1.1 notes that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." *United States v. Thomas*, 933 F.3d 605, 611 (6th Cir. 2019) (citing U.S.S.G. § 3E1.1 cmt. n.5).

In *Trevino*, the defendant argued that the district court miscalculated his guidelines range because it refused to reduce his offense level based on U.S.S.G. § 3E1.1(a) after exercising his right to trial. The Sixth Circuit specifically advised that the acceptance of responsibility reduction,

"is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Johnson*, 627 F.3d at 585 (quoting U.S.S.G. § 3E1.1 cmt. n.2). The Sixth Circuit noted that, "[i]n rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt." *Theunick*, 651 F.3d at 588 (internal citation omitted) (quoting U.S.S.G. § 3E1.1 cmt. n.2). Additionally, the Sixth Circuit stated that even where a defendant does "admit substantial elements of the crime charged," a reduction is not appropriate if the defendant continues to contest even one factual element of the offense. *Coss*, 677 F.3d at 292.

In its most recent statement on this issue in *Bethune*, the Sixth Circuit noted that during sentencing the judge offered Bethune an opportunity to accept responsibility, but Bethune declined to do so. And as a result, the judge concluded, "[T]he Court will not provide any reduction for acceptance of responsibility." *Bethune*, No. 22-3688, 2023 WL 4204532, at *1. The Sixth Circuit there noted that the defendant:

> appears to be asking for the right to receive this benefit despite holding the government to its proof and preserving his unencumbered right to proceed with future attacks on his sentence. But "the reduction is 'not intended for a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt.'" ***So although a judge can apply § 3E1.1(a) after trial, id., the provision is not intended to benefit a defendant who proceeds not just with trial, but with further challenges to his conviction and sentence.*** The district court did no more than apply the guideline in a standard fashion.

*Id.* (emphasis added) (quoting *United States v. Hill*, 167 F.3d 1055, 1071 (6th Cir. 1999) and

U.S.S.G. § 3E1.1 cmt. n.2).  This Court made these specific points at the sentencing hearing.[7]  [DE

290 at 14371-72, 14473-76].

   This is not a substantial issue on appeal.  First, the Court noted that it clearly considered

Hankison's statement of responsibility in its consideration of the § 3553(a) factors, so regardless

of whether the two-level decrease was granted under U.S.S.G. § 3E1.1(a), his statement was

---

[7] After hearing the allocution the Court explained that:

> And I believe the statement as I heard it was that he would not shoot under those
> circumstances as they have come to light during the lengthy trials in this matter.

> And while I don't deny that is an important step in it and that is taking responsibility, the
> way the guidelines are written, . . . the court is required to look at the determination of
> whether the defendant has accepted responsibility based primarily upon pretrial statements
> and conduct. And it's applied . . . post-trial in circumstances where what has been preserved
> is primarily a constitutional challenge to a statute, challenge to the applicability of a statute,
> and where going to trial is to preserve some of those arguments, but those arguments would
> not relate to factual guilt.

> And so the adjustment here is not intended to apply to a defendant who puts the government
> to its burden of proof at trial by denying the essential factual elements of guilt, is convicted,
> and only then admits guilt and expresses remorse. . .

> I think it's note six, you know, again, we are looking at circumstances where these types
> of statements made are timely. Timeliness in terms of the acceptance is a consideration
> under all of these sections, either (a) or (b), and so I can't find that 3E1.1 on what's been
> stated which is not unequivocal, certainly, and not really in keeping with the case law nor
> what this particular guideline is intended to do.

> I think if you begin to allow this type of thing to occur, we sort of take out the meat and
> substance of what 3E1.1 is really about and its intention. That doesn't mean that I don't
> certainly consider the defendant's statement overall when considering the 3553(a) factors.
> But as far as being a true acceptance of responsibility that was timely and that we're not
> still contesting whether there was guilt -- I mean, even if you look at what the arguments
> were for a new trial, those -- those were not about weight of the evidence. They were about
> certain, you know, issues of misconduct, but there has never been that sort of, "Yeah, I did
> it" – "I did it wrong" before trial or in any timely way that would qualify under the
> application note. And I think it's even supported by that Sixth Circuit case law in *Bethune*
> which I said earlier. It's not intended for these types of circumstances.

[DE 290 at 14473-76].

considered and taken into account in sentencing. And, he received a below guideline sentence, so this is certainly not a "substantial" issue or "material" to his sentence as it was already considered.

Second, the case law and guidelines are clear about what factors the Court can and should consider in applying U.S.S.G. § 3E1.1(a) and the Court considered those. The Court is to look primarily at pretrial conduct (and contrary to defendant's assertions, those include the actions and arguments of counsel in representing him). "The defendant did make legal arguments at the outset of the case, but expanded upon those arguments and challenged, factually, the elements of the offense and the proof that was being offered by the United States . . . [H]e clearly contested the facts presented by the government through the witnesses and through the closing argument that he presented." *United States v. Guerrero*, 76 F.4th 519, 531 (6th Cir. 2023).

The circumstances here are similar to *Guerrero*, where the defendant sought review of the trial courts denial of the two-level reduction under U.S.S.G. § 3E1.1(a). The Sixth Circuit reaffirmed that "[e]ven where a defendant does 'admit substantial elements of the crime charged,'" § 3E1.1(a) does not apply "if the defendant contests even one factual element of the offense." *Id.* (citing *Trevino*, 7 F.4th at 432), but then noted that:

> Guerrero challenged several factual issues. Most blatantly, he challenged (and continues to challenge) the factual issue of whether he was part of a larger, overarching conspiracy with all of the individuals named in the indictment, or one smaller conspiracy solely with Defendant One. . . .While Guerrero's challenge on this front may also involve legal issues, it plainly involves factual questions as well, making § 3E1.1(a) inapplicable.

*Id.* (citing *United States v. Macias Martinez*, 797 F. App'x 974, 979 (6th Cir. 2020) ("Campos is mistaken to argue that the district court revoked the acceptance-of-responsibility reduction solely on the basis of a 'legal argument' made by his counsel. That legal argument, as shown above, was based upon a factual premise that itself amounted to a substantial denial (rather than acceptance)

of responsibility."). The *Guerrero* Court then went on to cite closing arguments of counsel regarding the failure of the United States to prove certain elements of the crime.

Importantly, as to Hankison's arguments here, the *Guerrero* Court also found the factual challenges to his guilt on appeal disqualifying for purposes of application of § 3E1.1(a). "Guerrero clearly challenged factual guilt at trial and continues to challenge factual guilt on appeal, even if he admits certain facts. Thus, § 3E1.1 does not apply." *Id.* at 532 (citing *Austin*, 797 F. App'x at 246–47 and *United States v. Hill*, 167 F.3d at 1071). Even in this motion Hankison continues to make factual challenges to his guilt, arguing insufficiency of evidence for conviction. Simply put, he has refused to accept that his bullets restrained Taylor's civil right to be free from unreasonable force and seizure in her final moments, that he was wrong, at the time, to fire his weapon in the manner he did. This is consistent with his arguments at trial, arguments in his motion for acquittal [DE 253], in this motion [DE 296] and in his appeal [DE 295]. His post-trial, post-conviction statement that knowing what he does now he would not shoot, does not "accept responsibility" that at the time of the incident he was wrong to fire and violated Taylor's civil rights as a result. He continues to challenge that his force was unreasonable and that she was alive, such that his force violated her civil rights. As such, his acceptance did not qualify for a two-level reduction under U.S.S.G. § 3E1.1(a) and the Court's consideration of his factual challenges to the charges before the trial, during the trial and after trial, was appropriate for assessing applicability of U.S.S.G. § 3E1.1(a). *Guerrero*, 76 F.4th at 531-32; *Martinez*, 797 F. App'x at 979.

The Court was in the best position to determine the applicability of his acceptance of responsibility, determined it according to established case law, and, in fact, considered it in the Court's analysis of the § 3553(a) factors. As a result, this is not an issue that forms a substantial or material question justifying bond.

22

ii.     *Improper Rebuttal Testimony at Trial.*

Hankison next asserts that the Court's decision to allow rebuttal testimony "is a substantial question that reasonable minds can differ on." [DE 296 at 14555]. Hankison asserts that the Court should not have allowed rebuttal because it merely allowed the United States to reopen its case after resting. [*Id.* at 14554]. Hankison asserts it was not real rebuttal, an argument he also made at trial. [DE 240 at 11642].

As an initial matter, the arguments made in Hankison's brief on this issue are misleading because the Court's statements were later expanded on, the Court changed its position with respect to the issue of affirmative defense, and in fact, the jury instructions were altered at the request of Hankison to reflect their argument that the issue of whether Taylor may have been deceased at the time Hankison fired was a element of the crime and not an affirmative defense. [DE 240 Vol. 10 at 11486]. The of whether Taylor was alive at the time Hankison shot was never previously brought to the Court's attention in this trial or the prior trial and was not submitted in any proposed jury instruction by either party. Hankison did not challenge whether Taylor was alive prior to the second trial and new theories were set forth as to who fired last, making it more difficult for the United States to prove whether Taylor was alive at the time Hankison shot. [DE 240]. Moreover, the new defense theory that Taylor was not alive when Hankison shot, would require the jury to disbelieve Hankison's testimony and other theories about when he shot in relation to the other officers. In sum, Hankison was asserting two divergent theories of the case, one of which was new and uncontested in the prior trial.

The admission or exclusion of rebuttal evidence is a matter within the sound discretion of the trial court. *Taylor v. Brandon*, No. 3:14-CV-0588-DJH, 2018 WL 3581142, at *2 (W.D. Ky. Jan. 30, 2018) (citing *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 345 (6th Cir. 2002)). A trial judge's

determinations regarding the order of proof and scope of rebuttal testimony will not be disturbed

absent an abuse of discretion. *Benedict v. United States*, 822 F.2d 1426, 1428 (6th Cir. 1987) (citing

*Geders v. United States,* 425 U.S. 80, 86 (1976)).

Evidence introduced on rebuttal typically serves to "'rebut new evidence or new theories

proffered in the defendant's case-in-chief,' and is not limited by the fact that the plaintiff could

have introduced the proffered evidence in his case-in-chief." *United States v. Hughes*, 308 F.

App'x 882, 888 (6th Cir. 2009) (quoting *Benedict* 822 F.2d at 1428). "The proper function of

rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an

adverse party." *United States v. Bland*, 2007 WL 2781114 (6th Cir. 2007) (quoting *United States
v. Levy*, 904 F.2d 1026, 1031 (6th Cir. 1990)). As stated by the Sixth Circuit in *Martin v. Weaver,*
666 F.2d 1013 (6th Cir. 1981), *cert. denied,* 456 U.S. 962 (1982):

> In the exercise of sound discretion, the district court may limit the scope of rebuttal
> testimony, *Geders v. United States, supra; United States v. Algie,* 503 F.Supp. 783,
> 793 (E.D.Ky.1980), to that which is directed to rebut new evidence or new theories
> proffered in the defendant's case-in-chief. *See, e.g., Bowman v. General Motors
> Corp.,* 427 F.Supp. 234, 240 (E.D.Pa.1977).
>
> However, '[w]here ... [the] evidence is real rebuttal evidence, the fact that it might
> have been offered in chief does not preclude its admission in rebuttal.' *National
> Surety Corp. v. Heinbokel,* 154 F.2d 266, 268 (3d Cir.1946). Furthermore, with
> respect to 'real rebuttal evidence,' the plaintiff has no duty to anticipate or to negate
> a defense theory in plaintiff's case-in-chief. *Weiss v. Chrysler Motors Corp.,* 515
> F.2d 449, 458–59 (2d Cir.1975).

*Id.* at 1020.

At trial, the United States requested rebuttal stating:

> We anticipate calling back Detective Nobles to testify that after all of the shooting ended, he heard a scream from inside Apartment 4 that was identified as the scream of a woman. And we are putting on that evidence to show that Breonna Taylor was alive after the defendant fired his shots and it's in rebuttal to –
>
> . . .
>
> They didn't hear anything and testimony that the defense presented from Sergeant Mattingly that said that Detective Hankison fired his shots after all the other shots had finished from both Sergeant Mattingly and Detective Cosgrove, which I think the defense is using to try to argue that Ms. Taylor had already been killed by Detective Cosgrove before the defendant fired, so it's in rebuttal to that evidence.

[DE 240 at 11641]. As such, the United States identified specific testimony elicited by Hankison in his case-in-chief that they wished to rebut. The United States believed that the new timing regarding when Hankison fired could be used to make it difficult for the United States to assert that Taylor was alive at the time Hankison shot, an issue that had not previously been in dispute in this or the preceding trial. As a result, the United States sought to recall Nobles.

Hankison objected stating that:

> It's not rebuttal evidence. We elicited no testimony whatsoever about Ms. Taylor and whether she was alive or not. Any discussion was based on the timing of the shots and what was heard in relation to the shots and then -- and the sequence of the shots, but there was zero testimony about Ms. Taylor and whether she was alive or not. This is an improper attempt to reopen their case and introduce evidence after they had rested.

[DE 240 at 11642].

The United States specified why this was "new evidence" and a "new defense theory" for which rebuttal was proper, stating:

25

> After Detective Nobles had finished testifying, Sergeant Mattingly was called by the defense and he testified -- . . .
> He was the only officer to testify that after Detective Cosgrove had completely finished firing, he said he heard Myles Cosgrove's echoing shots in the doorway stop, heard a break, and then heard additional shots from along the side of the apartment which, of course, are the defendant's.
> So, Mr. Hankison fired completely after Myles Cosgrove fired. And the import of that testimony is that the defense is going to use it to argue that Breonna Taylor had already been killed by Myles Cosgrove before the defendant fired those shots.

[DE 240 at 11645]. The Court then pointed out that this new theory would be directly contradictory to Hankison's original theory of the case and his sworn testimony.

> If I understand the defense theory of the case, the defense theory is that he saw -- he saw lights in the windows, okay, so if he saw lights in the windows from muzzle flashes, then presumably Detective Cosgrove has to still be firing, correct? In order to see flashes in the windows -- in order to see flashes in the windows, you -- for the defense theory of the case, you have to believe that Mr. Hankison and Detective Cosgrove were firing at the same time, correct?
> MR. SONGER: I agree with that logic, Your Honor.
> THE COURT: For logic, you have to believe that. If that is the case -- if that is the case, then the issue of Breonna Taylor being alive is not really very much an issue because they're both shooting at the same person at the same time, so there's -- she's not dead yet. They're both shooting at her, so the shots haven't been fired yet. Now, whether or not he shot in the first window while she was alive or not, that's a little bit different, but at least for purposes of when the shots end, logic tells us that you cannot believe the defense theory of the case and then also believe that she was deceased when he was firing because then the lights in the windows don't really make any sense. . .

[DE 240 at 11645-46]. The United States responded that it

> agree[d that] the two theories are inconsistent, but the fact is testimony was presented from Sergeant Mattingly that is -- that states that the defendant was the last person to fire, that he fired after Detective Cosgrove. I think that testimony would be used by the defense to argue that Breonna Taylor was already dead at the time the defendant fired his shots, and that testimony's unrebutted right now. So we -- I mean, we intend to literally ask three or four questions to Detective Nobles to rebut that specific testimony.

[DE 240 at 11647].

Hankison argued that whether Taylor was alive was only brought to the Court's attention in Hankison's Rule 29 motion and was not argued to the jury in the defense case-in-chief.

However, Hankison's counsel admitted that he intended to make that assertion to the jury in closing using the Mattingly's testimony and the new timeline of who shot last. [DE 240 at 11648]. The Court found from the arguments that Hankison elicited testimony regarding who fired last from Mattingly in their case-in-chief for the purpose of making the argument as to whether Taylor was alive or not (after all, this theory and testimony as in direct contradiction to Hankison's own testimony and theory of the case) and as a result, that the United States could rebut this new testimony and theory.[8] [DE 240 at 11655-57]. (Because this new theory was directly contradictory to Hankison's prior testimony and theory of the case, it would have been difficult for the United States to have preemptively addressed this in its case-in-chief.) In response, the Court also allowed Hankison to present surrebuttal evidence in the form of a stipulation, that no other officer heard anyone scream from the apartment after the shots were fired as well as allowing cross examination of Nobles. [DE 240 at 11652-52].

---

[8] "On the issue of rebuttal evidence, obviously it is in the sound discretion of the district court to limit rebuttal testimony and to allow it, for that matter. The proper function of rebuttal evidence is to contradict, impeach, or defuse the impact of the evidence offered by an adverse party and the district judge has discretion to limit that evidence to that which is directed to rebut new evidence or new theories proffered in the defendant's case in chief, but that is not necessarily required. Evidence or theories offered by the defendant are new for rebuttal purposes if under all the facts and circumstances, the evidence was not fairly and adequately presented to the trier of fact before the defendant's case in chief. And the district court has the ability to allow evidence that could have been offered in the government's case in chief but was not, so there's no real limit on that. And looking at the Sixth Circuit cases on this issue, that is -- seems to be very liberally employed to allow rebuttal evidence. Here the -- the issues that we're rebutting are really a little bit two-fold in regards to who shot last or didn't shot last or who heard who shot last or didn't shoot last, as well as whether or not what is the five seconds or so that Ms. Taylor would have to be alive during the course of that shooting event and how that timing comes into play. Now, this issue about whether or not she was alive during those seconds was not brought up prior to trial, it wasn't brought up in the last trial, wasn't brought up in this trial. She's been a victim in the case this entire time. So I think there is reason to find that the government would not have necessarily assumed that these five seconds are as important as they seem now based upon the defendant's arguments that have been made to the court and the testimony that's been elicited during their case in chief. So I don't think there is necessarily a reason on that account to deny it. This isn't something that's come up before and just wasn't anticipated. So I'm going to allow the rebuttal testimony. Having said that, I agree that there is some surrebuttal testimony very narrowly tailored to those two questions at issue that would -- would be permissible." [DE 240 at 11655-57].

As a result, the allowance of rebuttal evidence is not "close question or one that could go either way." It is discretionary and common where new theories or testimony are elicited to permit rebuttal testimony. This is especially true as the Court permitted surrebuttal evidence on what was a divergent theory of the case that would contradict Hankison's own sworn testimony.

While this may had been a substantial issue for the United States on appeal if the Court had not permitted real rebuttal evidence, the Court has discretion to limit or permit rebuttal as it deems appropriate. Moreover, the rebuttal testimony may not have been material either because there was already other testimony in the record on this issue. *See infra.* Section B.iii (The jury also heard testimony from the neighbor in the adjoining apartment, Cody Etherton, that when the gunfire stopped, he heard Walker encouraging Taylor to "breathe," telling her, "breathe, baby, breathe." [DE 215 at 12079]). For all the reasons stated, the Court exercised discretion to limit rebuttal as it did and thus, this is not a substantial question nor a material issue to support bond.

### iii. *Sufficiency of the Evidence to Convict Hankison*

Hankison asserts two arguments as to sufficiency of the evidence. As the Sixth Circuit has explained, the judicial role in a sufficiency of the evidence challenge is not to independently weigh the evidence and consider whether the jury reasonably could have taken a different view of it. *United States v. Paulus*, 894 F.3d 267, 275 (6th Cir. 2018). The relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nicoletti*, 849 F. App'x 574, 578 (6th Cir. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original)). The Court will "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001). Under this standard of review, a defendant faces "a

very heavy burden." See *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000); *Toya*, 2025 WL 2724903, at *3.

       1.   <u>Sufficiency of evidence that Taylor was alive at the time Hankison fired.</u>

First, Hankison asserts that there was insufficient evidence that Taylor was alive at the time Hankison fired shot. [DE 296 at 14555 (citing DE 217 at 12627)]. This element was clearly stated in the jury instructions, was argued at trial to the jury in closing arguments by both parties, and a jury convicted Hankison on count one finding this element satisfied. Moreover, this issue was asserted in Hankison's motion for acquittal and denied. [DE 272 at 14023-26].

As this Court stated in its Memorandum and Opinion on Hankison's Motion for Acquittal, Hankison affirmatively asserted that the United States failed present *direct* evidence that Taylor was alive at the time Hankison shot through the bedroom windows, and this Court agreed. However, it is unreasonable, if not impossible, to require an expert to determine the exact second that Taylor died, and that is what would be required, identification of the moment her heart and breath ceased within a window of less than 10 seconds. But that is not what the law requires. Circumstantial evidence, if a jury believes it, is sufficient to find this element. *United States v. Adams*, No. 3:24-CR-14, 2024 WL 4932510, at *3 (N.D. Ohio Dec. 2, 2024); *United States v. Wright*, 774 F.3d 1085, 1092 (6th Cir. 2014). Moreover, "such [circumstantial] evidence need not 'remove every reasonable hypothesis except that of guilt.'" *Ellzey*, 874 F.2d at 328 (quoting *United States v. Stone,* 748 F.2d 361, 363 (6th Cir. 1984)). While Hankison may disagree with the inferences a juror could draw from the circumstantial evidence, he fails to show those inferences could not reasonably be drawn by the jurors on this element of crime from the evidence presented at trial. *Adams*, No. 3:24-CR-14, 2024 WL 4932510, at *3.

The entire incident took place in a mere 10 seconds. [DE 222 at 12348]. Hankison's own testimony at trial was that he shot through the sliding glass doors and bedroom window at muzzle flashes he believed to be from a suspect's weapon. [*Id.* at 12329-36]. At trial, Hankison agreed that these flashes were from other officer's weapons, not Walker's weapon and who only fired one initial shot. [DE 240 at 11490-1]. For Hankison to be firing at muzzle flashes, the other officers–Mattingly first and then Cosgrove–must have still been firing their weapons when Hankison fired his shots through the sliding glass door and bedroom window. The testimony at trial was that while Mattingly did hit Taylor with his gunfire, it was the bullet fired seconds later from Cosgrove that was fatal. [DE 200 at 73]. As a result, based on the sequence of shots alone, a reasonable juror could infer that her death was not instantaneous, that it took at least a few seconds for Taylor to die, and that she was still alive when Hankison began firing through the bedroom window.

Additionally, there was the 911 call placed by Walker several minutes after the shooting ceased. [Gov't Ex. 1]. While the audio is unclear, with Walker's voice distressed, quickened, and his speech interrupted by his own cries and wails, a reasonable juror could interpret Walker as telling Taylor to "breathe" twice during the call. [DE 218 at 12104]. While Walker's statements could mean that she was not breathing and he was encouraging her to try, it could also just as reasonably mean that she was struggling to breathe, and he was encouraging her to continue. A juror could interpret the call either way and make their own inferences. The Court finds both inferences reasonable. Moreover, even if not breathing, the call alone does not necessarily establish that she was deceased when the call was made or, more importantly, establish that she was deceased at the time Hankison shot through the bedroom window.[9]

---

[9] Counsel also asserted that Walker did not say "breathe," but instead "Bre," referring to Walker's nickname for Taylor. Again, while a possible interpretation of the call, it does not foreclose on the reasonableness of other interpretations, the inferences the jury was entitled to draw from the evidence, or definitively establish Taylor's death prior to Hankison's shots through the bedroom window.

The jury also heard testimony from the neighbor in the adjoining apartment, Cody Etherton, that when the gunfire stopped, he heard Walker encouraging Taylor to "breathe," telling her, "breathe, baby, breathe." [DE 215 at 12079]. And finally, Detective Nobles testified that he heard a woman's scream from Taylor's apartment after the shooting stopped. [DE 240 at 11664]. While opposing counsel crossed Nobles on whether he was sure it was woman or not, this is a credibility determination that was in the purview of the jury.

In sum, drawing all inferences in a light most favorable to the United States, there was sufficient circumstantial evidence from which the jury did reasonably conclude that Taylor was alive when Hankison fired the first of five bullets through the bedroom window. This issue is not a close call, and the Court must "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Salgado*, 250 F.3d at 446.  Accordingly, this issue does not present a substantial question or a material issue to support bond.

> 2. <u>The United States' statement that reasonable minds could differ on whether charges should have been brought against Hankison at all.</u>

Second, Hankison cites to the United States' sentencing memorandum which states that "but for the jury's verdict in this case the government might proceed differently." [DE 296 at 14556 (citing DE 285, U.S. Sentencing Memo)].  He asserts that "reasonable minds certainly might disagree whether, even if Defendant Hankison's conduct did constitute a seizure, a prosecution under this statute should have been brought under these circumstances at all."  Hankison then argues that this somehow presents a significant question for review on which bond should be granted.

A prosecutor has broad discretion in deciding what charges to pursue, and the prosecutor's charging decisions are generally not subject to review by the courts, nor should they be in hindsight where no prosecutorial vindictiveness has been asserted. *Valentin v. Woods,* No. 19-CV-11068,

2023 WL 415152, at *12 (E.D. Mich. Jan. 25, 2023), *certificate of appealability denied sub nom. Valentin v. Tanner,* No. 23-1207, 2023 WL 5748143 (6th Cir. Sept. 1, 2023). Here, the case was presented to the grand jury, it did find probable cause to indict. *Valentin*, No. 19-CV-11068, 2023 WL 415152, at *12 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) and stating "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in [the prosecutor's] discretion."). The case was then presented to a jury which did convict on one count. There is no indication or allegations in the record that the prosecutor's charging decision was vindictive or based upon any impermissible factors. As such, Hankison cannot establish that the prosecutor abused his discretion or violated constitutional principles by charging Hankison and relief is not warranted on this argument. Whether or not the case should have been prosecuted is not an issue for this Court. A jury has spoken and this Court cannot and will not disturb its verdict without legal reason.

The standard now is not whether "reasonable minds . . . might disagree" about whether this should be indicted or whether there was a seizure. The relevant standard is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Nicoletti*, 849 F. App'x at 578. And to make that determination the Court must "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *Salgado*, 250 F.3d at 446.

To the extent this argument is intended to challenge whether there was sufficient evidence of a seizure, the Court incorporates its ruling on Hankison's Motion for Acquittal regarding this issue. [DE 272 at 14017-23]. "When an officer fires a gun at a person," but "the bullet does not hit the person, the 'show of authority . . . ha[s] the intended effect of contributing to [the person]'s

immediate restraint' and under our caselaw is a seizure." *Jacobs v. Alam*, 915 F.3d 1028, 1042 (6th Cir. 2019) (alterations in original) (quoting *Thompson v. City of Lebanon,* 831 F.3d 366, 371 (6th Cir. 2016)); *Floyd v. City of Detroit,* 518 F.3d 398, 405-06 (6th Cir. 2008) (rejecting officer's argument he could not have violated a citizen's Fourth Amendment rights by shooting at and missing the citizen); *see also Rodriguez v. Passinault*, 637 F.3d 675, 687 (6th Cir. 2011) (citations omitted) (stating that it "goes against established law" to believe that a citizen cannot "maintain an excessive force/unreasonable seizure Fourth Amendment claim without having been shot"). By firing through the doorway of Taylor's apartment, officers made a show of authority. Further, Hankison made a show of authority by firing through the glass sliding door and bedroom window. The show of authority by both the officers in the doorway and by Hankison on the side of the apartment, restricted Taylor's freedom of movement such that a reasonable person, under these circumstances, would not feel free to leave. Therefore, the officers, including Hankison, seized Taylor under the Fourth Amendment. *Campbell v. Cheatham Cnty. Sheriff's Dep't,* 47 F.4th 468, 479 (6th Cir. 2022). And as a result, the evidence was sufficient for a jury to conclude, beyond a reasonable doubt, that Taylor was seized.

The Court finds that Hankison has failed to satisfy his burden to demonstrate that he has raised substantial questions regarding sufficiency of the evidence for conviction. *See Vance*, 851 F.2d at 168. Thus, this issue does not present a substantial question or a material issue to support bond.

### iv.    *Jury Instructions.*

Hankison argues there is a substantial question of law regarding the jury instructions. [DE 296 at 14557]. The Sixth Circuit established a clear standard of review for jury instructions:

> This Court reviews jury instructions as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a sound basis in law to aid the jury in reaching its decision. A judgment may be reversed if the jury instruction fails accurately to reflect the law. However, this Court may not reverse unless the instructions, viewed as a whole, were confusing, misleading, or prejudicial.

*United States v. Rose,* 522 F.3d 710, 719 (6th Cir. 2008) (quotations, citations omitted) (outlining the Sixth Circuit's standard of review and applying it to an appellant convicted under 26 U.S.C. § 5861(d)). Further, if the parties request particular language, "it is not error to fail to use the language requested by the parties if the instruction as given is accurate and sufficient." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991) (quoting *United States v. Horton*, 847 F.2d 313, 322 (6th Cir. 1988)). The Sixth Circuit holds it error not to give a requested instruction only if the requested instruction is (1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concerns a point so important in the trial that the failure to give it substantially impairs the defendant's defense." *Williams*, 952 F.2d at 1512.

Hankison argues the Court failed to give a jury instruction consistent with *Graham v. Connor*, 490 U.S. 386 (1989) that "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." [DE 296 at 14556]. This is the instruction given:

SECOND ELEMENT, COUNT 1:
Deprivation of a Federal Right

For Count 1, the second element the government must prove is that the defendant deprived a person present in the United States of a right secured or protected by the Constitution or laws of the United States. Count 1 alleges that the defendant deprived Breonna Taylor of her right to be free from unreasonable seizures by a law enforcement officer. This right, which the United States Constitution guarantees to everyone in this country, includes the right to be free from the use of unreasonable force by a police officer during a seizure.

A seizure occurs if a law enforcement officer intentionally restrains someone's freedom of movement or liberty either by force or by a show of authority, and it includes restraining someone by firing a weapon at them.

A law enforcement officer's use of force violates the Fourth Amendment if it is objectively unreasonable. Unreasonable force is force that exceeds the objective needed to use such force. A law enforcement officer may use force to effectuate an arrest, prevent a suspect from escaping custody, or to defend himself or another from bodily harm. However, that officer may not use more force than is reasonably necessary to accomplish these goals.

In addition, even when it is objectively reasonable for an officer to use some force to take a person into custody or prevent that person from escaping, it still may not be reasonable to use deadly force. A police officer may use deadly force when that force is reasonably necessary to protect himself or someone else from an imminent threat of death or serious bodily harm. Remember, the overall touchstone of whether deadly force is justified under the Constitution is whether that force was objectively reasonable under the circumstances.

To determine whether any force used by the defendant was objectively reasonable, **you should consider all of the facts and circumstances as they would be viewed by an ordinary and reasonable officer on the scene at the moment that force was used**. In making your determination, you may consider the amount of force used, any effort made by the defendant to temper or to limit the amount of force used, the threat reasonably perceived by the defendant, the duration of the incident, and the extent, if any, to which Breonna Taylor was physically resisting arrest or attempting to flee at the time the force was used.

Force must be objectively reasonable at the time it was used. In determining whether the force used was reasonable under all the facts and circumstances, keep in mind that force that is objectively reasonable at the beginning of an encounter may not be justified – even seconds later – if the objective justification for the initial use of force has been eliminated. It is also possible for a mistaken belief to be reasonable under the facts and circumstances.

[DE 228 at 10887-88 (emphasis added)]. The Court declined to add the specific language sought by Hankison because it would have been duplicative of the language already included in the instruction, specifically the first sentence that reads "[t]o determine whether any force used by the defendant was objectively reasonable, *you should consider all of the facts and circumstances as they would be viewed by an ordinary and reasonable officer on the scene at the moment that force was used.*"  As the Court explained, the requested language *Graham*, that use force is examined from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," is nearly identical in meaning. [DE 241, at 12806-09].

The Court made clear it was not adding the exact language from *Graham* because it was concerned with juror confusion.  [*Id*. at 12806 (stating the Court's "belie[f] that under the circumstances, when you give jurors two sentences which essentially say the same thing, they think they mean different things, but they don't actually mean anything different.")].  The Court explained that it was relying upon *United States v. Carson*, 560 F.3d 566, 579 (6th Cir. 2009), in not using the verbatim language from *Graham*. [*Id*. at 12807 ("*Carson* says that, you know, the important points are the circumstances, all of the circumstances, and the viewpoint of a reasonable officer, and those are the two highpoints that are in that first sentence of that paragraph.")].  Also, the Court made clear that it was not preventing Hankison's counsel from using the "hindsight" language from *Graham* in closing arguments. [DE 241 at 12810 ("And . . . it doesn't prevent you from using that language in your closing argument.")].  And, in fact, Hankison's counsel used this language in closings. [DE 241 at 12865 ("That's the context within which these decisions of life or death must be made, not with the benefit of 20/20 hindsight . . ."); *id*. at 12881 ("And the reasonableness of his actions in that moment are not judged by 20/20 hindsight after four and a half years of picking apart millisecond by millisecond of what happened here." ". . . no one has

36

the right to play Monday morning quarterback and apply 20/20 hindsight to your decision"); *id.* at 12912 ("So this is not about 20/20 hindsight.")].

In *Carson*, a request for exact wording from *Graham* was declined by the trial court in jury instructions because the trial court preferred neutral standard instructions and felt the *Graham* wording was not neutral. *United States v. Carson*, 560 F.3d at 579. The trial court's instruction was upheld by the Sixth Circuit because the jury instruction substantially covered and conveyed the import of *Graham*. *Id*. In upholding the trial court's instruction, the Sixth Circuit stated that "[w]e cannot place . . . talismanic weight . . . on *Graham's* exact wording and do not believe the district court needed to echo the opinion paragraph by paragraph to convey adequately its import to the jury. The important points are 'all circumstances' and 'from viewpoint of reasonable officer' and this instruction says that in this paragraph and the one above." *Id*. Here, similarly, this Court's instruction to the jury conveyed that the reasonableness of a particular use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight when it instructed that "you should consider all of the facts and circumstances as they would be viewed by an ordinary and reasonable officer on the scene at the moment that force was used." [DE 228 at 10888].  Thus, the Court cannot find that the language requested from *Graham* was "not substantially covered by the charge actually delivered to the jury," *Williams*, 952 F.2d at 1512. Further, as noted above, Hankison's counsel was permitted to use this language in closing and did in fact do so throughout; thus, even if the language were not covered by the instruction, the Court could not find its absence substantially prejudiced Hankison's defense.  *Id*. In sum, Hankison fails to raise a substantial question material to his appeal as to this issue.

**C. Motion for Extension of Time [DE 298].**

Hankison appealed the Court's Judgment on August 5, 2025. [DE 294]. Counsel then waited twenty days to move for bond pending appeal. [DE 296]. The United States responded on September 11, 2025. [DE 297]. On Monday, September 29, 2025, Hankison's counsel contacted this Court's Case Manager via electronic mail and stated that "Mr. Hankison has a report date of October 9, 2025. The parties are hoping to get a ruling on the motion for bail pending appeal as soon as the court is able." Three days later, after the close of business at approximately 7 o'clock p.m., Hankison filed a motion for a 60 to 90 day extension of time for Hankison to report to prison. [DE 298]. The Court became aware of the filing in the ordinary course on Friday, October 4, 2025.

This opinion is being issued within one week of being informed of Hankison's report date and less than thirty days from its initial filing, neither time frame is unreasonable nor demonstrative of delay. While the Court sympathizes with the ruling on this motion coming just a few days before Hankison's report date, a 60 to 90 day delay in reporting is inappropriate.

First, counsel waited twenty days after filing the Notice of Appeal to file this motion for bond and that delay cannot now be used to substantiate a postponement of his report date. Second, as discussed at sentencing it is critical that BOP be able to place Hankison in the most appropriate location given the circumstances of this case. The BOP has taken the time and effort to conduct that inquiry and for efficiency purposes it is simply inappropriate to request they redo this review. Finally, based on the fact that several of the issues alleged are simply unreviewable on appeal because they are denials of departures, the lack of explanation as to how the issues alleged herein would warrant a sentence without incarceration (or lesser incarceration) given the already considerably below guideline sentence based on the jury's verdict, and the lack of substantial, close call, or material questions, the Court denies the motion and issues this opinion resolving the

Hankison's request for bond pending appeal. *Pollard*, 778 F.2d at 1182 ("Since the district court is familiar with the case, the district court is in an excellent position to determine in the first instance whether the defendant raises a substantial question on appeal."); *United States v. Bryant*, 528 F. Supp. 3d 814, 817 (M.D. Tenn. 2021). As a result, at this level of review, the Court cannot find reason for an extension of time.

## IV.    CONCLUSION

"The general rule must remain that conviction for a covered offense entails immediate incarceration." *United States v. Garcia*, 340 F.3d 1013, 1022 (9th Cir. 2003). Despite his low risk of flight or danger to others, Hankison has failed to demonstrate a substantial question of law or fact material to his appeal justifying bond.

Accordingly, the Court **DENIES** Hankison's Motion for Bond Pending Appeal [DE 296] and **DENIES** Hankison's Motion for Extension of Time [DE 298].

Rebecca Grady Jennings, District Judge
United States District Court

October 6, 2025

39